UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANDY A. ALLEN,<br><br>*Plaintiff,*<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC. AND CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>*Defendants.* | Civil Action No.: 3:18-cv-8918 (PGS)(LHG)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants Verizon Wireless Communications, Inc. and Cellco Partnership d/b/a Verizon Wireless' (hereinafter "Verizon") Motion to dismiss Plaintiff Brandy A. Allen's amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), (ECF No. 18). Plaintiff alleges that Verizon and AT&T colluded to limit their customers' ability to change wireless service providers, and colluded to set industry standards that "would allow wireless carriers to lock devices to a certain network" by conspiring to prevent the use of eSIM technology. (Amended Compl., ECF No. 3, at ¶¶ 2, 4).[1] As a result, Plaintiff, a subscriber of AT&T, alleges

---

[1] As support for most of its allegations, Plaintiff relies on several online newspaper articles. Plaintiff contends that these articles are "source material" and are the basis for the factual allegations of the complaint. Because they are contained within the "four corners" of the complaint, Plaintiff argues this Court should consider the articles. Courts have allowed parties, in their opposition to Rule 12(b)(6) motions, to attach newspaper articles, not as evidence, but "to illustrate facts the party would be prepared to prove at the appropriate stage of the proceedings." *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 n. 17 (7th Cir. 2015); *see also Hunter v. City of New York*, 35 F.Supp.3d 310, 324-25 (E.D.N.Y. 2014); *Arroyo v. City of Buffalo*, No. 15-753A, 2017 U.S. Dist. LEXIS 113257, at *18-19 (W.D.N.Y. July 20, 2017) (noting

1

that she has been injured by Verizon and AT&T's conduct of "artificially limit[ing] choices in the market for wireless communications services and artificially inflat[ing] prices." (*Id.* at ¶¶ 9, 19).

Plaintiff brought the present complaint on behalf of herself and all others similarly situated, against Verizon alleging violations of Section I of the Sherman Antitrust Act, 15 U.S.C. § 1, "specifically, the anticompetitive combination, conspiracy, and/or agreement alleged . . . is a per se violation of Section I of the Sherman Act, 15 U.S.C. § 1" or "alternatively, the anticompetitive combination, conspiracy, and/or agreement alleged . . . resulted in substantial anticompetitive effects in the market for wireless communication services in the United States" (Count I); and a claim for injunctive relief for violations of Section I of the Sherman Antitrust Act, (Count II).

I.

A brief description of the technology at issue in this dispute is necessary. Cell phones utilize subscriber identity modules, or SIM cards, that contain unique identifying information about a specific user, which identifies that user to a specific wireless network. (*Id.* at ¶ 32). Wireless service providers, such as Verizon or AT&T, use SIM cards to determine if a particular cell phone belongs to a user who is paying for a subscription to use that mobile network's services. (*Id.*) SIM cards are "tiny piece[s] of plastic that users slide into a tray on their mobile device." (*Id.* at ¶ 5). Consumers will typically need to purchase a new SIM card when changing wireless service providers. (*Id.*) eSIM technology "enables remote SIM provisioning of any mobile device...." (*Id.* at ¶ 33). Essentially, eSIM technology is embedded into devices, including mobile phones. (*Id.* at ¶ 34). With eSIM technology, mobile phones and other devices no longer require a physical SIM card to use a wireless network. (*Id.*) Plaintiff explains that eSIM technology

---

plaintiffs may rely on a newspaper article as "support for meeting the plausibility standard"). Here, the newspaper articles attached to Plaintiff's complaint are considered in the above context.

2

allows consumers to switch wireless carriers remotely, without having to travel to physical store, because "eSIMS can store and adopt different profiles (or accounts)." (*Id.* at ¶ 37). Plaintiff explains, "[t]he eSIM technology is supported by other wireless carriers across the country and around the world, as well as several gadget makers, including Apple, Google and Microsoft." (*Id.* at ¶ 36).

In 2016, the Groupe Speciale Mobile Association ("GSMA"), "a mobile industry standard group," released guidelines that supported the use of eSIM technology. (*Id.* at ¶ 6). GSMA is "an industry organization which represents the interests of mobile operators worldwide, uniting nearly 800 operators with more than 300 companies in the broader mobile ecosystem, including handset and device makers, software companies, equipment providers and internet companies, as well as organizations in adjacent industry sectors." (*Id.* at ¶ 8). Further, "GSMA also produces industry events such as Mobile World Congress, Mobile World Congress Shanghai, Mobile World Congress Americas and the Mobile 360 Series of conferences." (*Id.*). Plaintiff alleges that after the GSMA released the guidelines, Verizon and AT&T opposed the guidelines, and "colluded to (1) lock customer eSIMS to their respective networks; and (2) to have GSMA set new standards allowing the same." (*Id.* at ¶ 7). Plaintiff explains that "locking eSIMS to a single carrier disables one of the most important functions of eSIM technology – the ability to simply switch to another carrier without visiting a physical store and changing a physical SIM card." (*Id.*)

The complaint alleges that Verizon and AT&T have colluded to prevent the use of eSIM technology in an effort to "restrict the ability of consumers to move easily from one wireless carrier to another." (*Id.* at ¶ 38). Plaintiff alleges that Verizon and AT&T's goals were to raise, fix, maintain, or stabilize prices in the market for wireless communication services by reducing competition. (*Id.* at ¶ 48).

In support of these allegations, Plaintiff contends the GSMA offered opportunities for Verizon to conspire with AT&T, because (1) Verizon's Executive Vice President/Chief Strategy Officer and AT&T's Executive Vice President of Global Connection Management both serve as members of the GSMA board and attend board meetings three times per year; (2) Verizon and AT&T are using their positions on the GSMA to influence the GSMA to adopt standards that do not support eSIM technology, and (3) Verizon and AT&T have participated in a "private" GSMA meeting,[2] wherein AT&T and Verizon advocated for their ability to lock phones to their own networks, not for antitrust purposes, but to prevent theft and fraud. (*Id.* at ¶ 41). Finally, in February 2018, Plaintiff alleges that the Antitrust Division of the United States Department of Justice began investigating Verizon for its anticompetitive conspiracy with AT&T, following formal complaints made by Google and Apple to the DOJ. (*Id.* at ¶ 51).

However, despite these allegations, Plaintiff's complaint does not allege any facts that show Verizon and AT&T were parties to a conspiracy, or that they entered into an agreement to stifle completion. The complaint also fails to allege any facts that show the individual actions of Verizon and AT&T were in furtherance of any agreement or conspiracy. Nor does the complaint provide facts describing what occurred at any "private" GSMA meetings, whether votes are required to pass industry standards and if so, whether the large market share of Verizon and AT&T impacts the weight of the votes.

---

[2] Plaintiff describes the alleged meeting as "private." This term is not well defined in Plaintiff's complaint, and it is not clear to the Court if this meeting was closed to the public, or if it was only open to certain members of the GSMA.

4

II.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000).

III.

Section I of the Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal . . ." 15 U.S.C. § 1. To maintain an antitrust action, plaintiffs must plead the following two elements: (1) "that the defendant was a party to a contract,

combination . . . or conspiracy" and (2) "that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) (quoting *In re Ins. Brokerage*, 618 F.3d 300, 315 (3d Cir. 2010)). The Court will address the first element initially.

A.

"The first element—a contract, combination, or conspiracy—requires 'some form of concerted action'" which the Third Circuit has defined as "'unity of purpose or a common design and understanding or a meeting of minds' or 'a conscious commitment to a common scheme.'" *Burtch*, 662 F.3d at 221 (quoting *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 315). Therefore, Section 1 claims "always require the existence of an agreement," and plaintiffs "must establish that agreement existed." *Id.*; *see also W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010). "Unilateral action, regardless of the motivation, is not a violation of Section 1." *Id.* Instead, a plaintiff must plead "some form of concerted action . . . , in other words, a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme . . . ." *LifeWatch Servs. v. Highmark Inc.*, 902 F.3d 323, 333 (3d Cir. 2018) (quoting *Ins. Brokerage*, 618 F.3d at 315).

An agreement may be shown by either direct or circumstantial evidence. *LifeWatch Servs.*, 902 F.3d at 333. The Third Circuit has described direct evidence as "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Jacob Blinder & Sons, Inc. v. Gerber Prods. Co. (In re Baby Food Antitrust Litig.)*, 166 F.3d 112, 118 (3d Cir. 1999). While direct evidence is more compelling, it is often difficult for plaintiffs to produce direct evidence to plead his or her claim, and courts allow plaintiffs "to rely solely on circumstantial evidence (and the reasonable inferences that may be drawn therefrom) to prove a conspiracy."

6

*Rossi*, 156 F.3d at 465. To show circumstantial evidence of an agreement, a plaintiff must allege parallel conduct and "plus factors." *See LifeWatch Servs.*, 902 F.3d at 333 (citing *Ins. Brokerage*, 618 F.3d at 321). The plus factors "could include evidence (1) 'that the defendant had a motive to enter into a . . . conspiracy,' (2) 'that the defendant acted contrary to its interests,' or (3) 'implying a traditional conspiracy.'" *Id.* at 333 (quoting *Ins. Brokerage*, 618 F.3d at 321). However, "'an allegation of parallel conduct and a bare assertion of conspiracy,' such as 'a conclusory allegation of agreement at some unidentified point,' will not suffice . . . rather, 'allegations of parallel conduct . . . must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'" *LifeWatch Servs.*, 902 F.3d at 333 (quoting *Twombly*, 550 U.S. at 556-57). Accordingly, ["a]lleging parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Burtch*, 662 F.3d at 227.

Plaintiff has not presented any direct evidence of a conspiracy between Verizon and AT&T. Instead, Plaintiff argues that she has plausibly plead parallel conduct that evidences a conspiracy: that Verizon and AT&T colluded to block consumers from using eSIM to easily change wireless providers. To support this argument, Plaintiff's complaint alleges that, in 2016, after GSMA released guidelines that supported the use of eSIM, Verizon and AT&T worked to block eSIM technology. (AC at ¶¶ 7, 36). Specifically, plaintiff alleges that Verizon actively did not support eSIM, while AT&T locked eSIM from working on its devices. (*Id.*) In furtherance of this alleged conspiracy, Plaintiff claims that both Verizon and AT&T worked to have GSMA set new standards that would allow wireless providers to lock eSIM to individual networks. (*Id.*) Plaintiff alleges that this parallel conduct had a common goal: "raising, fixing, maintaining or

7

stabilizing prices in the market for wireless communication services by reducing competition." (*Id.* at ¶ 48).

Although Verizon and AT&T's conduct was not identical for plaintiff to sufficiently plead parallel conduct; it was parallel in the sense that Verizon actively did not support eSIM, while AT&T locked eSIM from working on its devices in order to produce an antitrust harm. (AC at ¶¶ 7, 36). In addition to the non-identical parallel conduct, Plaintiff has alleged the following plus factors allege plus factors: 1) the nature of the wireless market makes it conducive to collusion; (2) Verizon and its co-conspirator had a motive to conspire; (3) Verizon and its coconspirator had the opportunity to collude during GSMA meetings and at industry conferences; (4) Verizon's and its co-conspirator's conduct would not make economic sense but for the conspiracy; and (5) the government is investigating potential collusion between Verizon and its co-conspirator regarding their efforts to thwart eSIM. (Pl. Br., ECF No. 21 at 12).

Regarding the market conditions, Plaintiff alleges that market conditions support an inference of conspiracy because: (1) there are a limited number of wireless service providers; (2) the barriers to entry are extremely high; and (3) the products are homogenous. (AC at ¶ 43). Plaintiff argues that only four major players dominate the wireless provider market (Verizon, AT&T, T-Mobile, and Sprint), so that the market is highly concentrated. (*Id.* at ¶ 44). The nature of a market, "without more, [is] insufficient to establish antitrust liability." *In re Chocolate Confectionary Antitrust Litig.*, 999 F. Supp. 2d 777, 790-91 (M.D. Pa. 2014). Thus, on its own, "market structure evidence is 'neither necessary nor sufficient." *Id.* (quoting *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 361 n.12. (3d Cir. 2010). Accordingly, the Court will examine the other plus factors that Plaintiff alleges.

Regarding motive to conspire, Plaintiff asserts that Verizon and AT&T have conspired to limit eSIM technology to limit consumer choice and maintain profits to protect their own profits, and in doing so, are using their positions on the GSMA to influence the GSMA to adopt standards that do not support eSIM technology. Participation in standard setting bodies, like the GSMA, without more, does not allege an inference of conspiracy, however, may be considered as "another feature of the factual background." *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 632 (E.D. Pa. 2010); *see also Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp. 2d 170, 179 n.50 (D. Mass. 2013).

Without more, participation on a standard setting board is not enough to allege a conspiracy. Here, Plaintiff has simply alleged that Verizon and AT&T are both members of the GSMA, and as members of the GSMA, they both attend board meetings and various conferences hosted by the GSMA. As members of the GSMA, Verizon and AT&T may advocate for their interests to that board. Verizon and AT&T's mere participation in the GSMA and their attendance at various GSMA meetings and conferences does not suggest any conspiracy. Additionally, preventing theft and fraud are both logical reasons that would support Verizon's actions to choose not to support eSIM technology. (AC at ¶ 41). There is no specific meeting where representatives of AT&T and Verizon acted in a manner showing some type of parallel conduct.

Plaintiff also provides no contextual support for its allegations that Verizon and AT&T were part of a "private" meeting where they advocated for the ability to lock phones to their networks. While Plaintiff alleges that these meeting occurred, this alone does not support a conspiracy between Verizon and AT&T. Plaintiff also does not explain when the GSMA decided to develop a standard that would support limiting eSIM technology- whether this occurred before

or after the "private" meeting, or if this was on GSMA's own initiative, or as the result of Verizon and AT&T's alleged conspiracy.

Further, Plaintiff has failed to adequately plead what Verizon's conduct was that gives rise to a conspiracy. However, Plaintiff fails to explain what it means by Verizon not supporting eSIM technology – whether it means Verizon is working against the development of eSIM technology, or whether Verizon's own products do not have eSIM technology capability. The term is too ambiguous to defend against. Arguments by counsel at oral argument did not clarify this issue. At this time, one cannot determine exactly what conduct of Verizon constitutes antitrust conduct.

Finally, Plaintiff argues that the existence of a DOJ investigation, in addition to the other allegations, supports an inference of conspiracy. "Although pending government investigations may not, standing alone, satisfy an antitrust plaintiff's pleading burden, government investigations may be used to bolster the plausibility of § 1 claims." *W. Va. ex rel. McGraw v. Bank of Am., N.A. (In re Mun. Derivatives Antitrust Litig.)*, 790 F. Supp. 2d 106, 115 (S.D.N.Y. 2011). Here, Verizon attempts to distinguish between criminal and civil government investigations. Regardless of the nature of the investigation, whether it is criminal or civil, the DOJ is currently conducting an investigation into Verizon and AT&T's conduct, the same conduct alleged in this complaint. However, this is the only plus factor that lends support to Plaintiff's allegations of a conspiracy.

In summary, Plaintiff has provided only conclusory allegations that are not supported by any factual assertions, from which reasonable inferences may be drawn that would support the existence of a conspiracy. Plaintiff instead has highlighted different reasons why it believes Verizon and AT&T could enter a conspiracy. Plaintiff does nothing to push her allegations from merely possible to plausible. Instead, plaintiff's allegations could reasonably be seen as the

independent actions of Verizon and AT&T, and not the evidence of a conspiracy. For these reasons, Plaintiff has failed to establish that an agreement existed.

B.

To sufficiently plead an antitrust claim, a plaintiff must allege both that a conspiracy existed, and that the conspiracy imposed an unreasonable restraint on trade. As stated above, plaintiff has not adequately plead that a conspiracy existed. The Court will nonetheless examine whether there existed an unreasonable restraint on trade. This element is analyzed under either the *per se* standard, or the rule of reason standard. *Burtch*, 662 F.3d at 221.

The *per se* rule applies "when a business practice 'on its face, has no purpose except stifling competition.'" *Id.* (quoting *Eichorn v. AT&T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001)). Thus, agreements that fall under the *per se* rule are "conclusively presumed to unreasonably restrain competition [and] per se illegality is reserved for only those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Id.* at 221-22 (quoting *Ins. Brokerage*, 618 F.3d at 316). "A plaintiff seeking application of the *per se* rule must present a threshold case that the challenged activity falls into a category likely to have predominantly anticompetitive effects." *Northwest Wholesale Stationers*, 472 U.S. 284, 298 (1985). In contrast, agreements that are not per se illegal are analyzed under the rule of reason analysis. *Burtch*, 662 F.3d at 221. Under this analysis, "the plaintiff 'bears the initial burden of showing that the alleged [agreement] produced an adverse, anticompetitive effect within the relevant geographic market.'" *Id.* (quoting *Ins. Brokerage*, 618 F.3d at 315). In order to make such a showing, a plaintiff typically must include "a demonstration of defendants' market power." *Id.* (quoting *Ins. Brokerage*, 618 F.3d at 315).

11

Under both the *per se* standard, and the rule of reason analysis, Plaintiff's complaint fails because it does not allege an unreasonable restraint on trade, for the following reasons. First, neither Plaintiff nor Verizon has informed the Court, should the GSMA adopt guidelines that would allow wireless careers to lock a device to its own network and restrict eSIM technology, if these guidelines are binding, or if they are simply recommendations. If a trade association "provides information ([or] gives a seal of approval) but does not constrain others to follow its recommendations, it does not violate antitrust laws." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989). Accordingly, it is unclear to the Court at this time what impact, if any, GSMA guidelines regarding eSIM technology would have, and whether these guidelines, if implemented, would result in an unreasonable restraint on trade.

Second, though Verizon has allegedly vocalized its resistance to eSIM technology, for the purpose of preventing theft and fraud, the GSMA has not adopted any industry standard to allow a wireless carrier to lock a device to a network. Accordingly, such alleged vocalized resistance has not been clearly alleged to show an unreasonable restraint on trade. (AC at ¶¶ 40-41). Further, the Complaint does not clearly allege any impact on the eSIM technology. For example, it is not alleged that Verizon's vocalized resistance has negatively impacted any vote on any industry standard. That is, if the GSMA votes to adopt industry standards, and if it does so vote, what percentage of the vote does each board member hold. At this time, there is no allegation that Verizon controls the GSMA board.

Finally, even if the GSMA were to implement guidelines that would allow locking an eSIM to wireless networks, and prevent consumers from changing wireless providers on their own without visiting a physical store, that alone does not itself restrain trade. The complaint does not address whether restraining consumers use of eSIM technology would also totally restrain their

ability to change wireless providers. The complaint also does not address what, if any, impact the restriction of eSIM technology has on other wireless carriers. Accordingly, Plaintiff has failed to sufficiently allege a restraint on trade.

II.

Verizon additionally argues that Plaintiff lacks standing to bring an antitrust claim. Standing is a threshold requirement for an antitrust case. *Phila. Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 343 (3d Cir. 2018). Antitrust standing is "rooted in prudential principles" and while "harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, courts must also consider whether the plaintiff is a proper party to bring a private antitrust action." *Id.* (first quoting *Ethypharm S.A. Fr. v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013); then quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983)).

Antitrust injury is a "necessary but insufficient condition of antitrust standing." *Id.* at 233. A plaintiff must prove the existence of an antitrust injury, "which is an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. . . . [and] [t]he injury must reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Phila. Taxi Ass'n*, 886 F.3d at 343 (quotations omitted).

Because Plaintiff has failed to set forth a viable antitrust claim, the Court need not address whether she has standing. *See Id.* at 343 n.7 (suggesting that it may be permissible to address the merits of an antitrust claim before standing, as "antitrust standing is prudential, [and courts] are not bound to address it first, because it does not affect the subject matter jurisdiction of the court, as Article III standing does."). Even if this Court were to consider whether Plaintiff has antitrust

13

standing, Plaintiff has failed to allege an antitrust injury, which is fatal to her standing to bring an antitrust action. The complaint fails to clearly identify any injury, and instead vaguely suggests that the alleged anticompetitive conduct had injured competitors and Plaintiff "by artificially limit[ing] choices in the market for wireless communications services and artificially inflat[ing] prices." (AC at ¶ 9).

Plaintiff has not suggested any facts which would support that she has been restrained in any way from switching between wireless carriers, or that she was subjected to any artificially inflated prices. Plaintiff alleges injuries based on Verizon's purported refusal to support eSIM technology, but has failed to show how this refusal has had a negative impact on her, and for this reason, has failed to show how she suffered a recognizable antitrust injury.

## CONCLUSION

Based on the present amended complaint, Plaintiff has failed to adequately alleged the existence of a conspiracy or that the alleged conspiracy imposed an unreasonable restraint on trade. Further, Plaintiff has not shown how she has standing to bring an antitrust claim, as she has failed to show any specific antitrust injury. For these reasons, Plaintiff's complaint is DISMISSED.

## ORDER

This matter, having been brought before the Court on Defendants' motion to dismiss (ECF No. 18), and the Court having carefully considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 31st day of January, 2019;

**ORDERED** that Defendant's motion to dismiss (ECF No. 18) is GRANTED; and it is further

**ORDERED** that Plaintiff may file an amended complaint within 30 days of this order.

_____
PETER G. SHERIDAN, U.S.D.J.